## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WESLEY TANKSLEY, et al.,        )
                                             )

                     **Plaintiffs,**     )

                                             )        **Civil Action**

v.                                        )

                                             )        **No. 12-1149-TJJ**

BAY VIEW LAW GROUP, P.C., et al.,     )

                                             )

                    **Defendants.**    )

## MEMORANDUM AND ORDER

The Court has under consideration the following motions: (1) Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue by Mahroze

Baloch (ECF No. 36); (2) Motion to Dismiss Plaintiffs' Claims for Failure to State a Claim Upon

Which Relief May Be Granted by Mahroze Baloch (ECF No. 39); and (3) Motion to Amend

Pleadings (ECF No. 61) filed by Plaintiffs.[1]  All motions are opposed and fully briefed.  For the

following reasons, the Court denies the first and third motions, grants the second motion, and

dismisses the claims asserted against Defendant Baloch.

## I.     Legal Standards

In a pretrial motion to dismiss for lack of jurisdiction, when the matter is decided on the basis

of affidavits and written materials, the plaintiff must only make a prima face showing that personal

jurisdiction is proper to avoid dismissal.[2]  The well-pled facts of the complaint must be taken as true

---

[1]For ease of reference, the Court will cite to each motion and supporting brief by its ECF number.  The Court notes, furthermore, that Defendant Baloch filed his motions pro se even though the Court had not yet granted his attorney permission to withdraw from this case.  Because the Court granted the attorney permission to withdraw two days later (*see* ECF No. 45), the Court will consider the motions despite the procedural irregularity.

[2]*Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000).

to the extent they are uncontroverted by defendant's affidavits.[3]

A court considers a motion to dismiss for improper venue under Fed. R. Civ P. 12(b)(3).[4]
Plaintiff bears the burden of establishing that venue is proper, and the court resolves all factual
disputes in plaintiff's favor.[5] In ruling on the motion, the court may consider matters outside the
pleadings without converting it to a motion for summary judgment.[6]

In the interest of justice, a district court may transfer a civil action to another district or
division where it might have been brought for the convenience of parties and witnesses.[7] A court
should decide motions to transfer on an individualized, case-by-case basis.[8] The party moving to
transfer a case under Section 1404(a) bears the burden of establishing that the existing forum is
inconvenient, but shifting the inconvenience from one side to the other is not a justification for
transfer.[9] Unless the balance of interests is strongly in the movant's favor, plaintiff's choice of forum
should rarely be disturbed.[10]

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court assumes as true all
well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of

---

[3]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[4]*See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992).

[5]*Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000).

[6]*Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176 (D. Kan. 1999).

[7]*See* 28 U.S.C. § 1404(a).

[8]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

[9]*Id.*

[10]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

relief.[11]  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible — and not merely conceivable — on its face.[12]  In determining whether a complaint states a plausible claim for relief, the court draws on its judicial experience and common sense.[13]

The court need not accept as true those allegations which state only legal conclusions.[14] Plaintiff bears the burden of framing his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.[15]  Plaintiff makes a facially plausible claim when he pleads factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged.[16] Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability.[17]  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.[18]  Similarly, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

---

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[12] *Id.* at 679-80; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

[13]*Iqbal*, 556 U.S. at 679.

[14]*See id.*; *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991).

[15]*Twombly*, 550 U.S. at 556.

[16]*Iqbal*, 556 U.S. at 678.

[17]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[18]*Iqbal*, 556 U.S. at 678.

alleged — but has not "shown" — that the pleader is entitled to relief.[19] The degree of specificity

necessary to establish plausibility and fair notice depends on context, because what constitutes fair

notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.[20]

Finally, leave to amend is a matter committed to the sound discretion of the district court.[21]

Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend "should be freely given when justice so

requires." A district court should refuse leave to amend only upon a showing of undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment.[22] A proposed amendment is futile if the

amended complaint would be subject to dismissal.[23]

## II.     Factual Background

Plaintiffs Wesley Tanksley and Amy Tanksley commenced this diversity action by filing a

Complaint on April 20, 2012, against a California professional corporation, Bay View Law Group,

P.C. ("Bay View"), and four California residents, James L. Farley ("Farley"),[24] Mahroze J. Baloch

---

[19]*Id.* at 679.

[20]*Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

[21]*See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987).

[22]*Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).

[23]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[24]Plaintiffs filed a notice of voluntary dismissal without prejudice as to Farley (ECF No. 12), and on February 28, 2013, presiding District Court Judge Carlos Murguia entered an order of dismissal (ECF No. 21).

("Baloch"), Jedediah N. Thurkettle ("Thurkettle"), and Thom Lopez[25] ("Lopez").[26]  Farley, Baloch,

and Thurkettle are lawyers.[27]  The complaint alleges the following facts:

In the spring or early summer of 2009, Plaintiffs received a postcard from Bay View which

advertised and promoted Bay View's debt reduction services.[28]  After receiving the postcard, Amy

Tanksley called and spoke with an agent of Bay View.  In July of 2009, both Plaintiffs spoke with

Lopez for approximately an hour to discuss Bay View's services.  As Lopez described it, Plaintiffs

would make all of their monthly payments to Bay View instead of to their creditors because the

program would work only if Plaintiffs were three months past due on their bills.  In turn, Bay View

would settle Plaintiffs' credit accounts for much less than the outstanding balances.  Bay View would

take their fees out of the first three monthly payments, and thereafter the payments would accumulate

in Plaintiffs' "trust account."  Plaintiffs were impressed that attorneys provided the services and that

they would be represented if they were sued, although Lopez made it sound unlikely that any creditor

would sue Plaintiffs.  According to Lopez, Bay View had a great working relationship with creditors.

On or about July 30, 2009, Lopez sent Plaintiffs an attorney-client agreement ("the

Agreement") and other documents by email; that same day, Plaintiffs executed the Agreement and

returned it to Bay View by fax.  Plaintiffs then received by telephone a series of disclaimers

regarding the risk associated with debt management.

The Agreement obligated Plaintiffs to pay $8,400.00 to Bay View (an amount which

---

[25]On June 27, 2013, Judge Murguia entered an order dismissing Plaintiffs' claims against Lopez without prejudice for failure to serve him with process (ECF No. 27).

[26]*See* Compl. (ECF No. 1) ¶¶ 2-6.

[27]*See id.* ¶¶ 3-5.

[28]*See id.* ¶ 15.

approximated 15% of the debt that Plaintiffs were seeking to resolve), and between August 21, 2009

and June 22, 2010, Bay View withdrew a total of $8,004.59 from Plaintiffs' bank account in

Sedgwick County, Kansas. Between January and May of 2010, creditors filed two lawsuits against

Amy Tanksley and one against Wesley Tanksley. On July 2, 2010, Wesley called Bay View and

spoke to a series of people, ending with Baloch.[29] Wesley told Baloch that Plaintiffs had received

nothing from Bay View after they signed the Agreement and he expressed his discontent with Bay

View's entire operation. Baloch told Wesley that Bay View was addressing Plaintiffs' escrow

situation and would be mailing a statement. On July 8, 2010, Bay View employee Robin Russell

sent Plaintiffs a new set of agreements by email, including a "Re-Amortization." Plaintiffs signed

the document and returned it to Bay View by fax on or about July 18, 2010. Plaintiffs also received a

packet of materials welcoming them to Bay View's "debt settlement service." The packet was

unsigned but had a signature line for Jedediah N. Thurkettle, Esq.

Shortly thereafter, Plaintiffs learned that Bay View was not authorized to provide credit

services in Kansas in spite of a requirement that it obtain such authority. Although Bay View's

Facebook page identifies the Bay View Law Group as a law firm with a debt settlement department

and attorneys in 45 states, Bay View never referred Plaintiffs to a Kansas attorney. Nor did Bay

View ever negotiate with or pay any of Plaintiffs' creditors.

In a letter dated July 19, 2010, Amy Tanksley demanded that Bay View return her money,

and Plaintiffs halted their automatic payments to Bay View. Bay View eventually returned

approximately $2,000 to Plaintiffs. During all of their communications with Bay View, Plaintiffs

were physically present in Kansas.

---

[29]Plaintiffs refer to this same telephone conversation as occurring on both July 2 and July 7. *See* ECF No. 1 ¶¶ 32, 33.

Plaintiffs' Complaint asserts the following six claims against defendants: (1) an ongoing

violation of the Kansas Credit Services Organization Act ("KCSOA");[30] (2) advertising without

proper registration and oral marketing in violation of KCSOA;[31] (3) deceptive and unconscionable

acts in violation of the Kansas Consumer Protection Act ("KCPA");[32] (4) civil conspiracy; (5) breach

of contract; and (6) declaratory and injunctive relief.  Defendant Baloch filed his answer to Plaintiff's

complaint on August 31, 2012.[33]

On October 15, 2012, the Court granted the motion to compel arbitration filed by Bay View,

Thurkettle, and Baloch.[34]  In that same order, the Court stayed all proceedings.  The parties

proceeded to arbitration and on October 7, 2013, Plaintiffs filed a notice of arbitration order, advising

the Court that the arbitrator had ruled the parties' contract illegal and void.[35]  The Court then entered

an order lifting the stay and setting a scheduling conference.[36]

On January 8, 2014, Defendant Baloch filed the two motions to dismiss currently before the

Court.[37]  One month later, Plaintiffs filed their motion for leave to amend their complaint.[38]

On January 21, 2014, the parties consented to jurisdiction by a United States Magistrate

---

[30] K.S.A. 50-1118(a) and 50-626(a).

[31] K.S.A. 50-1121(f).

[32] K.S.A. 60-626 and 60-627.

[33] *See* ECF No. 13.

[34] *See* ECF No. 19.  The Memorandum and Order also denied without prejudice those Defendants' alternative motion to change venue as moot.

[35] *See* ECF No. 29.

[36] *See* ECF No. 30.

[37] *See* ECF Nos. 36 and 39.

[38] *See* ECF No. 61.

Judge.[39]  The undersigned United States Magistrate Judge therefore has jurisdiction to rule on the

pending motions.

### III.     Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

Pursuant to Fed. R. Civ. P. 12(b)(2) and (3), Baloch seeks to dismiss the claims asserted

against him for lack of personal jurisdiction and improper venue.  Alternatively, he moves to transfer

the case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

### A.     Personal Jurisdiction

Before moving to dismiss this action for lack of personal jurisdiction, Baloch filed a motion

and a pleading in this case.  On August 23, 2012, Baloch (along with Bay View and Thurkettle) filed

a motion to compel arbitration or in the alternative, to change venue.[40]  On August 31, Baloch filed

his Answer.[41]   Baloch did not assert a defense based on lack of personal jurisdiction in either of

those filings.  Baloch's failure to assert such defense in his answer or a pre-answer motion waives the

defense.[42]

Baloch argues that he did not waive the defense because he believed that the Complaint was

improper in that the Agreement contains an arbitration provision.  He offers no legal support

excusing him from the pleading requirement of Rule 12(b), however, and the Court is aware of none.

Baloch also argues that he should be permitted to assert a personal jurisdiction defense under the

---

[39]*See* Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 53).

[40]ECF No. 8.

[41]ECF No. 13.

[42]*See* Fed. R. Civ. P. 12(h)(1); *FDIC v. Oaklawn Apartments,* 959 F.2d 170, 175 (10th Cir.
1992); *Burdett v. Harrah's Kan. Casino Corp.*, 311 F. Supp. 2d 1166, 1177 (D. Kan. 2004).

Kansas pleading statute.[43] This case is governed by the Federal Rules of Civil Procedure, however, and state pleading statutes do not apply. Baloch has waived the defense of lack of personal jurisdiction, and the Court denies his Rule 12(b)(2) motion to dismiss him as a defendant in this case for lack of personal jurisdiction.

### B. Venue

Baloch argues that venue does not properly lie in the District of Kansas under 28 U.S.C. § 1391(b) because not all defendants are Kansas residents and the events leading to this litigation occurred in California. He urges the Court to dismiss this action under Fed. R. Civ. P. 12(b)(3), or to transfer it to the Central District of California because venue properly lies in that district.

Section 1391(b) provides three independent bases for determining the judicial district(s) in which venue is appropriate. The first relates to districts in which any defendant resides.[44] Plaintiffs do not rely on this basis to establish venue and therefore the Court need not consider Baloch's argument as to residence. A second independent basis is contained in Section 1391(b)(2): "A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[45] Under this section, venue properly lies in the District of Kansas because "a substantial part of the events or omissions giving rise" to this litigation occurred in this district. Bay View sent advertising to Plaintiffs in Kansas. Plaintiffs negotiated and entered into the Agreement from Kansas. Bay View withdrew funds from Plaintiffs' Kansas bank account and all of Defendants' representations which form the basis of Plaintiffs' complaint were made to Plaintiffs in Kansas. A

---

[43]K.S.A. 60-212(h).

[44]*See* 28 U.S.C. § 1391(b)(1).

[45]28 U.S.C. § 1391(b)(2).

substantial part of the events giving rise to Plaintiffs' lawsuit thus occurred in the District of

Kansas.[46] Because venue is proper in the District of Kansas, there is no basis to dismiss this action

for improper venue under Fed. R. Civ. P. 12(b)(3).[47] Accordingly, the Court denies the motion to

dismiss insofar as it alleges improper venue.

### C. Transfer.

Baloch makes the alternative argument that the Court should transfer this action, pursuant to

28 U.S.C. § 1404(a), to the Central District of California for the convenience of parties and witnesses

and in the interest of justice.[48] Such transfers may be on motion or by consent of the parties.[49] A

proper transfer under Section 1404(a) avoids wasting time, energy, and money and "protect[s]

litigants, witnesses and the public against unnecessary inconvenience and expense."[50]

The Court engages in a two-part inquiry under Section 1404(a) to determine if transfer is

proper: (1) whether Plaintiffs could have filed this action in the Central District of California, and

(2) whether the venue change would be convenient for the parties and witnesses and be in the interest

---

[46]Baloch contends that these events cannot be applied to him for purposes of determining venue because they relate to conduct by other defendants. Venue is not a concept that applies to individual parties; venue applies to "civil actions." 28 U.S.C. § 1391(a) ("[T]his section shall govern the venue of all civil actions brought in district courts of the United States."); 28 U.S.C. § 1391(b) ("A civil action may be brought in a judicial district . . ."). As set forth above, Plaintiffs rely on 28 U.S.C. § 1391(b)(2) as the basis for venue in this district. Section (b)(2) provides that a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Plaintiffs have satisfied their burden of establishing that venue is proper in this district under that independent basis. *See Heck v. Sutcliff*, No. 13-2264-CM, 2013 WL 5651406, at *2 (D. Kan. Oct. 16, 2013).

[47]*See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013).

[48]28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

[49]*Id.* Plaintiffs do not consent to transfer.

[50]*Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted).

of justice.[51]  The Central District of California includes Orange County.[52]  The business address of

Bay View and the addresses of Baloch and Thurkettle lie within the territorial confines of Orange

County.  For venue purposes, therefore, these Defendants reside in the Central District of

California,[53] and Plaintiffs could have filed suit in that district.  Because all defendants are residents

of California, Plaintiffs could have filed suit in the Central District of California.[54]

When the proposed transferee district is a proper recipient, the Court next considers several

discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of
> proof, including the availability of compulsory process to insure attendance of
> witnesses; the cost of making the necessary proof; questions as to the enforceability of
> a judgment if one is obtained; relative advantages and obstacles to a fair trial;
> difficulties that may arise from congested dockets; the possibility of the existence of
> questions arising in the area of conflict of laws; the advantage of having a local court
> determine questions of local law; and all other considerations of a practical nature that
> make a trial easy, expeditious and economical.[55]

The movant has the burden to show that the existing forum is inconvenient.[56]  And a change of venue

is not justified merely to shift "the inconvenience from one side to the other."[57]  Courts rarely disturb

the chosen forum unless the balance of these factors strongly favors the movant.[58]

---

[51]*See Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581; *Am. Heart Disease Prevention Found., Inc. v. Hughey*, 905 F. Supp. 893, 896-97 (D. Kan. 1995).

[52]*See* 28 U.S.C. § 84(c).

[53]*See* 28 U.S.C. § 1391(c)(2).

[54]*See* 28 U.S.C. § 1391(b)(1).

[55]*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).

[56]*Id.*

[57]*Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

[58]*Id.*

Baloch contends that he, the other defendants, and witnesses will suffer substantial burden, including inconvenience and additional costs should this action proceed in Kansas.[59] He argues that the case has no real connection to Kansas aside from Plaintiffs' residence.[60] In his reply brief, Baloch asserts that the witnesses will be current and former Bay View employees who reside in California.[61] Baloch provides no affidavits, names of witnesses, or any other evidence upon which the Court can assess the claimed burden.

Baloch has not shown that the balance of the factors strongly favor transferring this case. He states in conclusory fashion that proceeding in this district would be a burden on him, other defendants, and possible witnesses. Convenience of witnesses is the most important factor in deciding a motion under Section 1404(a),[62] but a party seeking transfer must provide sufficient specificity about the witnesses and their testimony for this factor to weigh in his favor. In addition to identifying the witnesses and their locations and indicating the quality or materiality of their testimony, the movant must show that (1) the identified witnesses are not willing to come to trial in a distant court, (2) deposition testimony would not be satisfactory, or (3) it will be necessary to use compulsory process to compel the witnesses to appear for trial.[63] Baloch states generally that possible witnesses will be the other defendants or current or former Bay View employees. And while he asserts that they would testify about his role with Bay View, he provides nothing from which the Court can find that deposition testimony would be unsatisfactory. Moreover, Baloch

---

[59]ECF No. 37 at 17.

[60]*Id.*

[61]ECF No. 63 at 15.

[62] *Employers Mut. Cas. Co.*, 618 F.3d at 1169.

[63]*Id.*

ignores the competing burden on Plaintiffs should the Court transfer the case to California. It appears likely that a transfer would merely shift the inconvenience from Defendants to Plaintiffs.

As Plaintiffs point out, they have also asserted claims under Kansas law and this case is set for trial in October 2014. Thus, if the case remains in this district, questions of Kansas law will be decided by a court sitting in Kansas and no difficulties will arise from a congested docket. These factors support keeping the case in Plaintiffs' chosen forum. Plaintiffs also contend that the remaining factors listed above are either neutral or irrelevant, and Baloch does not address them. Baloch has simply not carried his burden to show that this case should be transferred. For all of these reasons, the Court denies the alternative motion to transfer this action under 28 U.S.C. § 1404(a).

## IV.    Motion to Amend

Plaintiffs seek to amend their complaint to add a new paragraph which alleges that Baloch was a "managing attorney" for Bay View by at least October 28, 2011. The original complaint identifies Baloch as "an attorney associated with defendant Bay View."[64] Plaintiffs seek to add the paragraph to respond to a declaration Baloch submitted in support of his motions to dismiss, in which he denies that he had authority or control in Bay View's business dealings. Baloch opposes the amendment on the grounds that it is untimely, prejudicial, made in bad faith and with undue delay, and would be futile.

Baloch filed his declaration in support of his motions to dismiss on January 8, 2014.[65] On January 22, 2014, the Court established a February 7, 2014 deadline for the parties to file motions to

---

[64]*See* Complaint, ECF No. 1 ¶ 4.

[65]*See* ECF No. 41.

amend.[66]    However, Plaintiffs failed to file their motion to amend until February 10, 2014.[67]

Plaintiffs have neither shown good cause to modify the scheduling order as required by Fed. R. Civ. P. 16(b)(4), nor have they demonstrated excusable neglect for failing to move for an extension before expiration of the deadline as required by Fed. R. Civ. P. 6(b)(1). The Court thus finds the motion to amend untimely and denies it.

Even if Plaintiffs had timely filed their motion, adding the single paragraph they propose would be futile. Plaintiffs seek to amend their complaint for the purpose of responding to one of Baloch's arguments in his motion to dismiss pursuant to Rule 12(b)(6). Plaintiffs provide no basis upon which the Court could find that the allegation in the new paragraph — that an internet blog identifies Baloch as a "managing attorney" of Bay View — adds a substantive allegation to Plaintiffs' claims. And as will be seen in the next section, the allegation does not cure the defective pleading which Baloch notes in his motion to dismiss for failure to state a claim. For these reasons, the Court denies Plaintiffs' motion to amend the complaint.

## V.    Motion to Dismiss for Failure to State a Claim.

In his second motion, Baloch seeks an order dismissing this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. He argues that Plaintiffs fail to plead facts alleging that he conducted debt settlement activities, was an officer of Bay View, or asserted control or had decision-making authority as to Bay View's business decisions. Baloch asserts that Plaintiffs have alleged nothing more than that he took a phone call from Plaintiffs, and that such allegation does not state a claim for direct or agency liability.[68]

---

[66]*See* Scheduling Order, ECF No. 54 ¶ 3b.

[67]*See* ECF No. 61.

[68]*See* ECF No. 40 at 3-5.

Plaintiffs oppose Baloch's motion and argue that they have adequately alleged the existence of a conspiracy in which Baloch participated.[69]   Plaintiffs assert a claim for Civil Conspiracy as Count Four of their Complaint.  In full those paragraphs state:

> 68.  Paragraphs 1 through 67 are hereby incorporated by reference as though fully set out.
>
> 69.  The concerted actions of all defendants constitute a civil conspiracy under Kansas law.[70]

In the preceding 67 paragraphs, Plaintiffs mention Baloch by name in only two paragraphs. Plaintiffs identify him as "an attorney associated with defendant Bay View" in paragraph 4 of their Complaint and further state that each time he communicated with them, "he did so as an agent of Bay View."  In paragraph 32, Plaintiffs allege that Mr. Tanksley called Bay View on July 2, 2010, and spoke to several people, including Baloch.  After initially speaking to one person, Mr. Tanksley was transferred to a different person who kept putting him on hold and not giving him any answers.[71]  The second person eventually told Mr. Wesley "that his concerns would be addressed, and that he would receive a statement by e-mail."[72]  After waiting on hold for more than an hour, Mr. Tanksley was able to speak to an attorney – Baloch – who told him that Plaintiffs' "escrow situation was being addressed now and that [Mr. Tanksley] would be receiving a statement in the mail."[73]

Under Kansas law, civil conspiracy contains the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one

---

[69]*See* ECF No. 58 at 4-9.

[70]*See* Compl., ECF No. 1 ¶¶ 68-69.

[71]*Id.* ¶ 32a.

[72]*Id.* ¶ 32c.

[73]*Id.* ¶¶ 32d and 32e.

or more unlawful overt acts; and (5) damages as the proximate result thereof.[74]  In addition, civil

conspiracy is not actionable under Kansas law "without the commission of a wrong giving rise to a

cause of action independent of the conspiracy claim."[75]  "The essence of a conspiracy is two or more

persons agreeing in some form and acting on a desire to bring about an illegal result."[76]  Because the

conspiracy is not "the gravamen or gist of the action," alleging a conspiracy "does not in and of itself

allege a cause of action."[77]  To warrant recovery, there must be a

> right of action independent of the conspiracy.  For example, a conspiracy to defame or
> injure the reputation or social standing of a plaintiff is actionable; but, since the gist of
> a civil action for conspiracy to defame is the defamation itself, it follows that if no
> action could have been maintained for the alleged defamation, no action can be
> maintained for the conspiracy to defame.  Thus, the question of whether a cause of
> action has been stated depends in large part upon the underlying torts alleged against
> the individual defendants.[78]

Plaintiffs' conspiracy claim fails to plead what defendants allegedly conspired to do.

Presumably, Plaintiffs would have the Court construe as sufficient Plaintiffs' allegation in paragraph

69 that "concerted actions of all defendants constitute a civil conspiracy under Kansas law."[79]  That

language is merely a conclusory allegation, which provides no factual basis for an allegation that

Baloch acted in concert with anyone.  To constitute an actionable civil conspiracy under Kansas law,

---

[74]*Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 29 Kan. App. 2d 746, 753, 31 P.3d 970, 976 (2001); *accord Carson v. Lynch Multimedia Corp.,* 123 F. Supp. 2d 1254, 1261 (D. Kan. 2000).

[75]*Carson*, 123 F. Supp. 2d at 1261.

[76]*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Cardwell Mfg. Co., Inc.,* 416 F. Supp. 1267, 1290 (D. Kan. 1976) (internal citation omitted).

[77]*Jackson v. Kan. Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2005 WL 756773, at *8 (D. Kan. Jan. 19, 2005) (quoting *Nardyz v. Fulton Fire Ins. Co.*, 151 Kan. 907, 101 P.2d 1045, 1048 (1940)).

[78]*Id.*

[79]*See* Compl., ECF No. 1 ¶¶ 69.

two or more persons must agree (have a "meeting of the minds") to accomplish a specific object or

course of action through one or more unlawful overt acts that proximately results in damages to the

Plaintiffs.  That the acts of one or more Defendants allegedly violated Kansas law is insufficient to

allege a conspiracy.

Plaintiffs contend that their Complaint sufficiently alleges every element of a civil

conspiracy.  They first assert that, through paragraph 69, they satisfy the pleading requirement for the

first element by referring to "all defendants."  While Plaintiffs are correct that they have sufficiently

alleged the involvement of "two or more persons," considering the allegation in isolation is

meaningless because all elements of a civil conspiracy must be examined in conjunction with each

other.

Plaintiffs next contend that paragraphs 50, 51, 55, and 56 sufficiently allege that the object of

the conspiracy is the provision of debt management services in violation of the KCSOA and the

KCPA.  Those paragraphs, however, do nothing more than repeat definitional language from the

KCSOA and state in conclusory fashion that "Defendants" violated the KCSOA through advertising

and oral marketing.[80]  The Complaint does not allege that Baloch engaged in advertising or oral

marketing, nor does it contain facts setting forth how Baloch is allegedly a "credit services

organization" and therefore subject to the KCSOA.  In ruling on a motion to dismiss under Rule

12(b)(6), the Court accepts as true all well-pleaded factual allegations, but not those which are no

more than legal conclusions.[81]  Plaintiffs' Complaint does not contain sufficient factual matter to

satisfy the second element of civil conspiracy.

Plaintiffs' factual allegations are particularly lacking with respect to the third element of a

---

[80]These paragraphs contain no allegations with respect to the KCPA.

[81]*See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

civil conspiracy, *i.e.* meeting of the minds in the object to be accomplished or course of action. Although Plaintiffs recognize that mere conclusory statements do not suffice, they contend that the Complaint sufficiently pleads circumstantial evidence in the form of acts of the various Defendants. The agreement Plaintiffs allege between Baloch and Bay View was an employment agreement. Notably, the Complaint merely alleges that Baloch was "an attorney associated with defendant Bay View,"[82] which standing alone does not allege an employment agreement. From that alleged agreement, Plaintiffs ask the Court to make a series of inferences which would ultimately include construing the Complaint to allege that Baloch's agreement with Bay View included his knowing participation in illegally providing debt management services. But even if the Court reasonably infers from the Complaint as a whole that an employment agreement existed, there is no basis to reasonably infer that Baloch knowingly agreed to participate in any unlawful debt management services. Plaintiffs allege in the Complaint that debt adjustment — also known as debt management — is regulated in nearly every state and has been criminalized as a felony or misdemeanor in thirty-three states.[83] Baloch's only alleged direct involvement with Plaintiffs was to speak with Wesley after receiving his transferred phone call. Under the facts as alleged, the Court cannot reasonably infer that Baloch and Bay View's employment agreement included an agreement to commit an unlawful act.

Given these pleading deficiencies, the Court need not consider whether Plaintiffs have alleged facts sufficient to satisfy the remaining elements for a civil conspiracy under Kansas law. Plaintiffs propose amending their Complaint to include an allegation that Baloch was a managing attorney for Bay View. Such amendment would not cure the deficiency with respect to an overt act

---

[82]*See* Compl., ECF No. 1 ¶ 5.

[83]*Id.* ¶¶ 10-11.

or a meeting of the minds. Count Four of Plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted.

Although Plaintiffs assert five additional counts consisting of two counts of violations of the KCSOA, one count of a violation of the KCPA, one count of breach of contract, and one count seeking declaratory and injunctive relief, the Complaint is wholly insufficient in alleging facts of a plausible claim against Baloch on any of those counts. The Complaint asserts each count against all Defendants even though the only factual allegation as to Baloch is that he spoke on the phone with Wesley on one occasion. Moreover, Plaintiffs do not address any of the additional five counts. The Court has found that the Complaint fails to state a claim against Baloch upon which relief can be granted as to Count Four, the civil conspiracy claim. Plaintiffs offer no basis upon which the Court could otherwise conclude with respect to their other theories. Accordingly, the Court dismisses all counts of Plaintiff's Complaint against Baloch for failure to state a claim upon which relief can be granted.

## VI. Conclusion

**IT IS THEREFORE ORDERED** that Defendant Mahroze Baloch's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the alternative, to Transfer Venue (ECF No. 36) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend Pleadings (ECF No. 61) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Mahroze Baloch's Motion to Dismiss Plaintiffs' Claims for Failure to State a Claim Upon Which Relief May Be Granted (ECF No. 39) be and hereby is **GRANTED**. Plaintiffs' claims against Defendant Mahroze Baloch are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this 29th day of May, 2014 at Kansas City, Kansas.

s/ Teresa J. James
Teresa J. James
U.S. Magistrate Judge
